

**QUEENS COUNTY DISTRICT ATTORNEY**
125-01 QUEENS BOULEVARD
KEW GARDENS, NEW YORK 11415-1568

**MELINDA KATZ**
DISTRICT ATTORNEY

718.286.6000
WWW.QUEENSDA.ORG

July 10, 2023

Honorable Cheryl L. Pollak
United States Chief Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: *Carlton Roman v. City of New York, et al.*
            22-cv-6681 (NGG)(CLP)

Your Honor:

    I am Counsel to District Attorney Melinda Katz and the Queens County District Attorney's Office. I am aware that the Court has ordered the deposition of District Attorney Katz and the production of the report from the Office's Conviction Integrity Unit (CIU) to DA Katz in Plaintiff's criminal case. Because of our serious concerns about the effect of this discovery on future CIU investigations and the Office's more complete knowledge of the circumstances surrounding the report, we ask that the Court accept this letter as a motion to reconsider the Court's order, as indicated below, and as my notice of appearance on behalf of the District Attorney.

    Pursuant to the Court's July 6, 2023, order, entered on July 7, 2023, the local civil Rule 6.3 and Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure, Queens District Attorney's Office requests this Court re-consider its discovery decision directing the disclosure of the CIU report and the deposition of District Attorney Katz, in light of the serious concerns and precedent-setting implications that this Court's ruling will have on all future conviction review cases. We also request that the Court conduct an in camera review of the report and that, as a third-party that is directly and adversely affected by the discovery order, we be allowed to appear before your Honor to argue this matter and to present first-hand information, previously unavailable to the Court, regarding the making of the report and the operation of the Conviction Integrity Unit from the Director of that Unit.

*Carlton Roman v. City of New York, et al.* 2
22-cv-6681 (NGG)(CLP)

Mindful of the Court's desire to expedite discovery, we are prepared to appear at the earliest convenience of the Court. Finally, we ask that the Court stay its order requiring disclosure of the CIU report by July 11, 2023, until the determination of this request.

Based upon my review of the prior motions and court decisions, I believe that the way this case proceeded the Court was not presented with a full briefing of the facts and circumstances surrounding the re-investigation as known to the District Attorney's Office, the prior disclosure during the concurrent Court of Claims action, or the extensive legal precedent on deliberative process and applicable law on the "Apex rule," largely precluding depositions of high-ranking government officials. Nor was the Queens County District Attorney's Office given the opportunity to provide its position on this matter and the knowledge it possesses. It also appears that the document discovery was not ordered in the typical manner after the issuance of discovery demands with the opportunity for the opposing party to respond to those demands, so no merits arguments were made at that time concerning the privileges that apply to the CIU report. Finally, I believe that at this juncture the defendants are not as familiar with the disclosures made during the CIU investigation and the discovery in the Court of Claims as is this Office. For these reasons, we ask that this Court re-consider its prior discovery orders.

Before I detail our concerns, the Court should be aware that the QDA fully and collaboratively investigated Mr. Roman's wrongful conviction claim, fully disclosed the information supporting his claim (contrary to his assertions), and jointly moved to vacate his conviction. The QDA does not dispute that Mr. Roman is entitled to \ the factual information necessary to prove his claims before this Court and that he is entitled to a just and timely resolution of the injustice that he has suffered. We are not looking to delay the resolution of this suit but the ordered discovery compelling deposition testimony from the District Attorney and disclosing internal briefing materials provided to her raises serious concerns that extend beyond Mr. Roman's case and will have significant detrimental effects on future wrongful conviction claims not just for District Attorney Katz, but for all District Attorneys who have conviction integrity units.

**Plaintiff Has Failed to Establish Extraordinary Circumstances to Warrant Deposing District Attorney Katz**

Both Federal and State Courts have ruled that high-ranking government officials should not be deposed in civil suits stemming from their official duties.

*United States v. Morgan*, 313 U.S. 409 (1941)(rejecting request to depose Secretary of Agriculture because the "mental processes" should not be probed as it is disruptive to the administrative process); *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)(affirming protective order barring depositions of Mayor Bloomberg and former Deputy Mayor Skyler); *In re U.S.*, 197 F.3d 310 (8thCir. 1999)(depositions of Attorney General Reno and Deputy Attorney General Holder not allowed seeking information regarding procedures used in withdrawing death notices in criminal prosecutions); *In re U.S.*, 985 F.2d 510 (11th Cir. 1993); *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575 (DC Cir. 1985); *In re Terrorist Attacks on September 11, 2001*, No. 03-MDL-01570 (GBD)(SN), 2020 WL 8611024 (S.D.N.Y. August 27, 2020).

It is well established that high-ranking government officials are generally immune from depositions, and that a party may only take the deposition of a high-ranking or "apex" governmental official under extraordinary circumstances. *See, e.g., New York v. Oneida Indian Nation of N.Y*, No. 95-CV-0554 (LEK/RFT), 2001 U.S. Dist. LEXIS 21616, 2001WL 1708804, at *3 (N.D.N.Y. Nov. 9, 2001)(denying motion to compel testimony of Governor and Secretary to Governor); *Colicchio v. New York*, 181 A.D.2d 52 (1st Dept. 1992)(reversing order of Supreme Court that permitted plaintiff to take the deposition of the Commissioner of the New York City Department of Transportation); *see also Torres v. City of N.Y.*, 39 Misc.3d 558, 566 (Ct. of Claims 2013)("Generally, a party seeking a deposition of a high-ranking official must show that the 'official has information that cannot be obtained from any other source and that a deposition would not interfere significantly with the official's ability to perform his or her governmental duties.'")(quoting *Hipolito Colon v. N.Y. City Bd. of Educ.*, 2008 N.Y. Slip Op. 31376(U), at *6 [N.Y. Cty. 2008]).

In fact, in affirming the grant of a protective order barring the depositions of former New York City Mayor Michael Bloomberg and a deputy mayor, the Second Circuit has held that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition." *Lederman v. New York City Dept. of Parks and Recreation*, 731 F.3d. at 203. These exceptional circumstances are defined as when the official possesses "unique first-hand knowledge" that "cannot be obtained from other, less burdensome or intrusive means." *Id.*

One reason for the immunity is because, "if high ranking officials, such as the head of a government agency, were routinely deposed, he or she would be 'spending

their time giving depositions and would have no opportunity to perform their functions.'" *Cannon v. Correctional Medical Care, Inc.*, 9:15-CV-1417 (GLS/DJS), 2017 U.S. Dist. LEXIS 98708, 2017 WL 2790531, at *5 (N.D.N.Y. June 27, 2017) (quoting *Marisol A. v. Giuliani,* No. 95 CIV. 10533 (RJW), 1998 U.S. Dist. LEXIS 3719, 1998 WL 132810, at *3 (S.D.N.Y. Mar. 23, 1998).

Here, Plaintiff failed to make a "clear showing" that the District Attorney possesses relevant and material information or unique knowledge essential to resolve this dispute **that could not be obtained from any other source**, *see, e.g., Pierre v. State*, 63 Misc.3d 1231 (A), at *3 (Ct. of Claims 2010) (movants seeking to depose the Governor failed to show that "any information he would testify to would be relevant, essential, and unable to be obtained by another source"), or that her testimony is essential to prevent prejudice or injustice to Plaintiff, *Hipolito Colon,* at *6. Indeed, his assertion that without ADA Alexis Celestin, who was responsible for the CIU investigation, that DA Katz is the only source to obtain the information and reliably and thoroughly explain what was known and/or considered in making the determination to vacate Plaintiff's conviction is simply not accurate.

Although District Attorney Katz certainly made the final decision to join in vacating Mr. Roman's wrongful conviction, she played no role in the underlying fact investigation. She did not personally investigate this matter, she did not speak to any of the witnesses, nor did she review any of the original police reports, other than excerpts that may have been shown to her. And while questions regarding her deliberative process should be separately prohibited, lower-level QDA staff possess identical (if not superior) knowledge of the consideration of the case and QDA's basis for agreeing to the vacatur.

To this end, as this Court is aware, the QDA has offered CIU Director Benjet as a proper deponent.[1] In fact, CIU Director Benjet played a part in every aspect of the CIU investigation and ultimate resolution of Mr. Roman's case. At the outset, Mr. Benjet reviewed Mr. Roman's submission to the CIU in June 2020 and then approved the CIU decision to open an investigation in the matter. Mr. Benjet worked closely with ADA Celestin in planning the investigation and approving the investigation plan created in the case. As the investigation progressed, Mr. Benjet

---

[1] In our March 20, 2023, opposition to Plaintiff's motion to compel disclosure in the Court of Claims, filed prior to Plaintiff's request to depose DA Katz, the QDA stated that ADA Benjet supervised ADA Celestin's investigation and was sufficiently knowledgeable to clarify matters, but Plaintiff instead told the Court that DA Katz was the only source of the information he was seeking.

reviewed the record of the case and all relevant documents obtained. Mr. Benjet participated in planning sessions for key interviews and reviewed all memos and recordings of witness interviews conducted by ADA Celestin and CIU detectives. Mr. Benjet also assisted in various aspects of the investigation, including research on potential witnesses in the case.

At the conclusion of the investigation, Mr. Benjet edited the CIU report and approved its contents before the report was submitted to District Attorney Katz on June 28, 2021. Mr. Benjet then participated in deliberative meetings with District Attorney Katz and other executive staff. After a decision was made regarding the outcome of the case, Mr. Benjet edited and approved the People's pleadings in the case. And in preparation for the hearing on the joint motion to vacate Mr. Roman's conviction, Mr. Benjet drafted proposed talking points for District Attorney Katz to introduce the motion. On the day of Mr. Roman's hearing and release, Mr. Benjet met with Mr. Roman and counsel and was present when the District Attorney Katz spoke with Mr. Roman and spoke in Court.

Allowing the deposition of DA Katz to go forward would be highly disruptive to functioning of our Office and the CIU process. To date, the District Attorney has agreed to the vacatur of 99 criminal convictions through the work of the CIU. If this Court's ruling stands, other similarly situated Plaintiffs likely will make the same request in their civil suits, which would significantly hamper the District Attorney's ability to effectively run her office if she has to prepare for, and be deposed, in this and similar civil suits. Moreover, the District Attorney's testimony might be necessary under such a ruling both in suits in which individuals were exonerated and those involving individuals whose claims were rejected by the CIU. Accordingly, given the substantial interests at stake and because District Attorney Katz does not possess any unique first-hand knowledge of the case, and CIU Director Benjet is an available alternative deponent who possesses superior knowledge about the case, the Court should reconsider its order compelling the deposition.

Further, labeling the District Attorney a key witness does not resolve the issue of whether her deposition should be taken. Rather, the necessary showing requires demonstration of extraordinary circumstances and the unavailability of other witnesses who could testify with the same or greater knowledge of the relevant issues. No such showing has been made.

The deposition sought by Plaintiff of the District Attorney is not only unnecessary and improper, but it seeks privileged information and material. It

violates universally recognized privileges, including, but not limited to, the deliberative process privilege, which recognizes that pre-decisional, confidential governmental deliberative materials and thought processes should not be disclosed because such disclosure would harm the public interest by impinging on the free deliberations of an agency in making policy. *See Cirale v. 80 Pine Street Corp.,* 35 N.Y.2d 113, 117-18 (1974). Where, as here, the reasons for the government action taken has been "elucidated" by a public announcement of the policy at issue and its basis, the government's interest in encouraging candor in policymaking is paramount over the litigants' interest in disclosure. *See, e.g., One Beekman Place v. City of New York,* 169 A.D.2d 492, 493-94 (1st Dept. 1991); *Martin A. v. Gross,* 194 A.D.2d 195 (1st Dept. 1993).

Indeed, if Plaintiff's stated reason for obtaining a deposition of the District Attorney were sufficient, then policy could not be made at all. Even the most minor decisions could be second-guessed by parties who would have preferred a different decision for their own reasons, who would then seek any and all information relating to the policy at issue, and to depose decision-makers about their thought processes. This is not, and should not be, the law.

**The CIU Report**

The CIU report is privileged attorney work product, deliberative and attorney-client material, and thus it should not be disclosed. To fully evaluate the QDA's assertions of these privileges, I respectfully submit that this Court should, as is occurring in the concurrent Court of Claims suit, review the report in camera before it rules on the application of these privileges. I would also ask that the Court consider following the time frame in the Court of Claims suit, the report was ordered to be provided to the Court of Claims by July 18, 2023.

**The Facts and Circumstances Relevant to the CIU Report**

As stated earlier, this Court issued its prior rulings without the benefit of the full circumstances surrounding this Office agreeing to vacate Plaintiff's conviction and these circumstances demonstrate that Plaintiff was provided with all the factual information regarding his claim and the reasoning for the DA's decision is clearly laid out in the affirmation submitted on her behalf by the CIU ADA.

As acknowledged above, Plaintiff is entitled to the documents, factual records, interview notes, and other records containing the factual information/evidence

related to the case and that which was gathered and learned by the CIU.  The CIU provided regular updates to counsel for Mr. Roman during the investigation and even unsealed records related to the prosecution against dismissed co-defendant Hollis Laylor and provided those records to Plaintiff's counsel. Consequently, much of the factual information/evidence gathered and learned by the CIU was provided to Plaintiff during the CIU investigation.

The facts ADA Celestin communicated in the CIU report were contained in thousands of pages of notes, recorded interviews, and other investigative records, all of which were disclosed to Plaintiff in March 2022, and the months that followed, in response to his Court of Claims subpoena. Specifically, the QDA disclosed to Plaintiff a 911 call, radio run audio recordings, electronically recorded witness interviews conducted by the CIU, and 4,752 pages of materials, which consisted of records from the original police investigation, the QDA appeals file, the QDA CIU file, and the material that the CIU determined was new evidence not presented to the jury and newly discovered evidence. Included with the disclosed records were the audio and video recorded interview with the eyewitness who recanted, every recorded witness interview, notes from three new non-testifying witnesses whose statements undermined the reliability of three of the trial witnesses, and ADA Celestin's handwritten notes of each and every witness she interviewed. Later, the QDA provided Plaintiff with Detective Investigator Maher's handwritten notes of his interviews and investigative steps he took and, after a meet and confer, some additional records were disclosed.

Contrary to Plaintiff's repeated assertions, he has all of the factual information which the QDA possesses about the re-investigation and the original investigation into this homicide and, should this matter go to trial, it is this factual information which, with the proper witness, he may enter into evidence. And, significantly, it is this underlying factual information and records, which formed the basis for the District Attorney's decision to vacate Plaintiff's conviction, not ADA Celestin's analysis of the facts and her legal conclusions stated in the CIU report.

The CIU Report was a preliminary document prepared to brief the District Attorney on information gathered during the CIU's investigation and to provide candid legal advice to her regarding the application of the law. This document was created for the sole purpose of advising the District Attorney in her deliberation as to the proper disposition of Plaintiff's wrongful conviction claim. While civil litigants are certainly entitled to documents, recordings, witness statements, and other factual information related to the case, they are not entitled to examine the pre-

decisional, candid legal advice provided to the District Attorney in aid of her deliberation. And disclosure of the CIU Report in this proceeding risks chilling the free exchange of information and ideas necessary for the District Attorney to make an accurate and just determination of the case.

At the completion of the CIU's investigation of Mr. Roman's claim, the Roman CIU report was drafted by former ADA Alexis Celestin, who has since passed away. This report contains the CIU's investigative strategy, legal research, witness statements, other factual information gathered by the CIU. The report reflects ADA's Celestin's analysis of facts and the law, based upon her thoughts and opinions of the evidence. Accordingly, the entirety of the CIU Report is ADA Celestin's work product. *See* N.Y. C.P.L. § 245.65; N.Y. C.P.L.R. § 3101(c); *Ward v. County of Wayne*, Case No. 21-12742 (E.D. Mich. Dec. 6, 2022)(holding that work-product privilege prevented disclosure of CIU's internal recommendations and analysis); *Smith v. County of Wayne*, Case No. 2:21-cv-12070 (E.D. Mich. Sept. 19, 2022)(holding that CIU memoranda prepared as part of plaintiff's exoneration investigation was prepared in context of pending criminal proceedings and in anticipation of future civil litigation and, therefore, was properly withheld from disclosure as they fell within the protections of the work product privilege).

This report was submitted to District Attorney Katz to assist her deliberation on what action, if any, should be taken relating to Roman's claim of innocence. The report was intended as means for ADA Celestin to provide her own account of the facts gathered during the CIU investigation, her proposed findings and legal analysis, and her candid legal advice to the ultimate decision maker, the District Attorney of Queens County. This report reflects the recommendations and opinion of ADA Celestin and not the policy or final determination of the District Attorney. *See Nat'l Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1117 (9th Cir. 1988)(deliberative process privilege requires the document to be pre-decisional or relating to the process by which policies are formulated and the encouragement of frank and open discussion of ideas improves the decision-making process). The District Attorney herself played no part in creating the report, conducting any of the interviews, or legal analysis. The report was never intended to bind the District Attorney, to reflect any final determination of Mr. Roman's case, and could not delineate which facts, evidence, or legal theories the District Attorney would later adopt after deliberation.

**The District Attorney's Deliberation**

After the submission of the CIU report to the District Attorney, the District Attorney and other executive staff deliberated with the CIU and amongst themselves, including with CIU Director Bryce Benjet and the undersigned, discussing the facts uncovered in the CIU investigation, ADA Celestin's opinion of these facts and her legal analysis, and the potential basis for the vacatur of the conviction.

The content of these deliberations and the documents advising the District Attorney's deliberations are generally afforded privilege as they are pre-decisional deliberative material. *See e.g., Brennan Ctr. For Justice at NY Univ. Sch. Of Law v. United States Dep't of Justice*, 697 F.3d 184 (2d Cir. 2012); *In re County of Erie*, 473 F.3d 413, 422 (2d Cir. 2007)(state officials entitled to privileged attorney-client legal advice, especially when legal advice is sought by officials responsible for law enforcement policy); *Hopkins v. U.S. Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991); *F.T.C. v. Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984)(deliberative process privilege developed "to promote frank and independent discussion among those responsive for making governmental decisions," and "the ultimate purpose . . . to protect the quality of agency decisions"); *Ward v. County of Wayne*, Case No. 21-cv-12742 (E.D. Mich. Dec. 6, 2022); *Smith v. County of Wayne*, Case No. 2:21-cv-12070 (E.D. Mich. Sept. 19, 2022)(disclosure of CIU report "would have a chilling effect on the incredibly important service performed by the CIU – investigating the possibility of exoneration – and the quality of its analysis, opinions, and recommendations").

The submission of a CIU report initiates a deliberative process that can span several weeks or several months. There are instances in which aspects of a report may be disregarded, revised, rejected, or supplemented by additional investigation after initial deliberation. And this was the case in this instance. While it would not be proper to discuss the specific deliberations in Mr. Roman's case, the District Attorney did not endorse every factual or legal assertion ADA Celestin made in this CIU report.

To fully re-investigate old crimes, members of this Office must be able to first engage in candid, confidential, pre-decisional deliberative discussions on factual and legal issues between themselves. The disclosure of the precise process used in this case will hamper, if not stymie, future CIU investigations. Members of the CIU, along with the District Attorney's executive staff will not feel free to express their candid opinions on these sensitive and highly important decisions to the District

Attorney due to concern that these opinions will be publicly disseminated in future litigation should a civil suit ensue. *See Lee v. FDIC*, 923 F. Supp. 451 (S.D.N.Y. 1996); *Smith*, No. 2:21-cv-12070 (disclosure of CIU report "would have a chilling effect on the incredibly important service performed by the CIU – investigating the possibility of exoneration – and the quality of its analysis, opinions, and recommendations").

As recognized by other courts under identical circumstances, disclosure of the CIU Report that summarizes and analyzes this information will needlessly invade the District Attorney's deliberative process and risk – as an institutional matter – chilling the very candid, thorough and open deliberations required to reach a just outcome in cases like Mr. Roman's. Deposition questions that probe into the deliberative process may have a similar effect. *See e.g., Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001)("the deliberative process privilege rests on the obvious realization that officials will not communicate candidly . . . if each remark is a potential item of discovery and front page news, and its object is the enhance the 'quality of agency decisions' by protecting open and frank discussion among those who make them . . . .")(internal citations removed); *Ward v. County of Wayne*, Case No. 21-cv-12742 (E.D. Mich. Dec. 6, 2022)("And while ..: defendants have substantial need for the evidence the CIU relied on when moving to vacate Ward's convictions, they have provided no reason for needing the CIU's internal interpretation of that evidence."); *Smith v. County of Wayne*, Case No. 2:21-cv-12070 (E.D. Mich. Sept. 19, 2022 (disclosure of privileged CIU report "would have a chilling effect on the incredibly important service performed by the CIU – investigating the possibility of exoneration – and the quality of its analysis, opinions and recommendations"). District Attorney Katz is entitled to candid, confidential, and privileged advice when considering a claim of actual innocence or wrongful conviction. The risk of public disclosure of deliberative materials such as the CIU Report or excerpts of a deposition probing the deliberative process will undoubtedly cast a shadow over the scope and content of future deliberations of ongoing CIU matters and creates the real possibility that future claims of actual innocence or wrongful conviction will not be adequately reviewed, and exonerations may not occur.

The effect of the disclosure of the report on the ability of the Office to engage in the process necessary to review the many claims of wrongful convictions should not be underestimated. The extensive review process undertaken here is typical of those necessary to consider serious wrongful conviction claims of individuals who are currently incarcerated, and often have been imprisoned for decades. The review

process spans many months and entails countless hours of sifting through facts and considering conflicting inferences, attempting to reconstruct events that often-occurred decades ago, analyzing bits of information in order to paint an often very incomplete picture of what happened long ago, judging the reliability of faded witness memories, and carefully deliberating on the legal basis for vacatur, if any. And the stakes could not be higher. The CIU process is an indispensable component of the Office of the District Attorney, necessary to ensure that the many claims of wrongful conviction are heard and given a chance of success. Without any protection for this process, a full review of, and deliberation on, these exoneration claims cannot be undertaken. The inevitable result is that wrongful convictions, like Plaintiff's here, may never be exposed. That is an eventuality that no criminal justice system, state or federal, can tolerate.

**Final Findings and Legal Conclusions of the District Attorney Are Communicated Through Filed Affirmation**

At the conclusion of the investigative and deliberative processes, the District Attorney's final factual determinations and legal conclusions are expressed in the pleadings filed in support of the motion to vacate, and not in a pre-decisional document prepared by an ADA in the CIU. In Mr. Roman's case, an affirmation setting forth the District Attorney's final factual findings and conclusions was first approved by the District Attorney and then signed by ADA Celestin. All prior reports, memorandum, and other briefing materials submitted to the District Attorney by the CIU were merely preliminary, as the District Attorney did not ultimately adopt all of ADA Celestin's factual findings or legal analysis and conclusions.

*Carlton Roman v. City of New York, et al.* 12
22-cv-6681 (NGG)(CLP)

**Request**

Accordingly, the District Attorney and this Office respectfully request reconsideration of the June 29 Order, and, upon reconsideration, issuance of a protective order prohibiting the deposition of the District Attorney. We also request the opportunity to appear before Your Honor and a stay of this Court's May 15, 2023, June 27, 2023, and July 7, 2023, orders directing disclosure of the CIU report until the Court has the opportunity to review the report in camera.

Respectfully Submitted,

John M. Castellano
Counsel to the District Attorney
Queens County District Attorney's Office
718-286-5801
jmcastellano@queensda.org

cc: Via ECF
James Henning, Esq.
Carissa Caukin, Esq.
Denise Amanda Dessel, Esq.
Attorneys for Plaintiff

Seema Kassab, Esq.
Assistant Corporation Counsel
Attorney for Defendants